*C. D. Saviers,* for plaintiff in error.

---

## EFFECT OF AMICABLE PARTITION ON INCHOATE DOWER.

[Common Pleas Court of Darke County.]

FLEMING, EXECUTOR, v. MORNINGSTAR.[*]

Decided, March 6, 1904.

*Co-Tenancy and Partition—Mortgage—Vendor's Lien in Amicable Partition—Effect of Amicable Partition on Inchoate Dower of Wife of a Tenant in Common—Estates Ancestral and by Purchase—Priority.*

In a case of amicable partition by mutual conveyances of unequal purparts, a mortgage given by one tenant in common (his wife not joining) to another to equalize the allotments, is subordinate to the wife's inchoate right of dower in the undivided interest acquired

[*]Affirmed by the Circuit Court without report; Circuit Court affirmed by the Supreme Court, 72 O. S., 647.

by descent of such mortgagor in the purpart so allotted to him, but is superior to dower in the share acquired by purchase from the mortgagee.

ALLREAD, J.

The controverted question here is the claim of Mrs. J. H. Morningstar to dower in a fourteen-acre tract of land sold by the administrator as part of the estate of her late husband.

This tract with others constituted the W. H. Morningstar estate, which upon his death in 1886, descended to J. H. and Alice Morningstar (now Fleming) in equal moieties.

There was a mortgage upon certain of the tracts given by the ancestor, and which is known in this case as the "Walker" mortgage. J. H. and Alice Morningstar gave a mortgage also upon certain of the tracts, known as the "Bachman" mortgage. The fourteen-acre tract was not included in either mortgage.

On July 1, 1889, for the purpose of amicable partition, the tenants in common agreed upon a division of the several tracts of the W. H. Morningstar estate, and each tenant in common released by a quit-claim deed the undivided half of the tracts allotted in severalty to the other. The allotment to J. H. Morningstar was valued at $6,300; this included the fourteen-acre tract valued at $2,100. The allotment to Alice was valued at $3,200. This would leave a balance upon allotment due her of $1,550.

Alice assumed the "Walker" mortgage of $1,128.65 and J. H. assumed the "Bachman" mortgage of $1,539.75. The difference in the amount of the mortgages assumed was in favor of J. H., $205.50, reducing the actual purchase money due Alice on the exchange to $1,344.50.

In their settlement, however, the purchase money of the tracts was mingled with other items and there was found due Alice by settlement, after deducting the excess of the mortgage assumed by J. H., $1,866.40. On the date of the partition deeds, a mortgage was given by J. H. to Alice Morningstar on the fourteen-acre tract for $1,500, reciting it to be for purchase money. No very clear evidence is forthcoming as to the discrepancy between $1,866.40 and $1,500, the amount of the mortgage, but

an inference arises that this amount was settled either by mutual accounts not shown or by cash payment.

The partition deed to Alice was signed by the wife of J. H. releasing dower, but she did not join in the mortgage. The $1,500 mortgage is now asserted by Alice and claimed to be superior to the dower of Mrs. Morningstar, and to be in fact a purchase-money mortgage upon the entire interest in the fourteen-acre tract.

Counsel do not differ materially as to the principle governing a vendor's lien, but the difficulty arises in applying the principle to a case of amicable partition. As to the *property sold* the equity of the vendor attaches at the very instant of the conveyance and is therefore superior to the dower. And the controversy here arises out of the character and nature of the dower interest attaching it to the estate of the tenant in common, as affected by the partition.

There is a clear distinction between estates in joint tenancy as existing at the common law and estates in common. In the former the estate of all the joint tenants was regarded as one estate and no dower attached, but in case of tenancy in common each co-tenant had a separate freehold estate and inchoate dower in the latter case attached to the undivided interest immediately upon seizin of the husband. But such right of dower was subject to the right of partition by the co-tenants.

Tracing the legal title alone it would appear that J. H. Morningstar acquired one undivided half of this fourteen-acre tract by descent and one undivided half by purchase from Alice, the former having been acquired in 1886 and the latter in 1889.

It is claimed that a different principle applies in case of partition and that the difference in the value of the shares taken in severalty is a prior lien upon the larger purpart.

Partition may be either by judicial or voluntary proceedings If by judicial proceedings the dowress is bound by the partition and her right attaches to the land apparted, or if the land can not be apparted, and is sold, the dower is divested and her right, if any, is transferred to the fund. *Weaver* v. *Gregg,* 6. O. S., 547; *Gillett* v. *Miller,* 12 C. C., 209.

In case of voluntary partition where equal shares are set off to the parceners the weight of authority is to the effect that the right of dower upon the co-tenant's share is remitted to the allotment in severalty. *Carter* v. *Day*, 59 O. S., 101; *First Scribner on Dower*, Sec. 341; *Doeterman* v. *Elder*, 27 Bull., 195.

It is claimed with much force and supported by a carefully and well prepared brief and argument that the same effect must be given to an amicable partition as to a judicial proceeding, and if dower is divested in the latter no less effect should be given to deeds of partition, especially as against the amount necessary to equalize the shares.

Dower is a statutory right. The statutes which give dower also divest it in certain contingencies. *Weaver* v. *Gregg, supra.*

No statute expressly divests dower on amicable partition, and hence such contention must find support in other authority.

It is argued that the difference in value between the larger and smaller purparts or divisions is a lien on the larger on the principle of owelty of partition, a doctrine originating in the chancery practice in England, and now recognized by statutes in many states. This doctrine is applied where it is impossible or impracticable to divide the estate in equal shares, and unequal allotments are therefore made subject to a charge upon the greater. Owelty of partition does not exist in this state as a statutory right. Where equal shares can not be allotted the entire estate is required to be sold and the proceeds distributed. But even if recognized in a case where the unequal division is made by consent, it yet remains to be considered what the effect of such a division has upon the inchoate dower of the wife of the tenant in common.

Owelty of partition where it exists is in the nature of a vendor's lien; but is it superior to dower?

The case of *Mosher* v. *Mosher*, 32 Maine, 412, supports the view that the inchoate dower attaching to the interest of the co-tenant acquired by descent is not affected by such lien. See, also, 11 Amer. & Eng. Enc. of Law, page 118; *Hordy* v. *Landrum*, 5 S. C., 213.

In *Thomas* v. *Bank of Maryland*, 32 Md., 58, the real estate descended to four children and by agreement was divided among

three with a charge in favor of the fourth for her share. One of the three became involved and assigned without having paid the amount charged. It was held that the lien for such charge arising in the division of the estate rested only on the one-fourth interest acquired by purchase from the heir in whose favor the lien was claimed and not upon the three-fourth interest acquired in part by descent and in part by purchase from the other heirs.

Freeman in his work on Co-tenancy and Partition (Section 411), in reference to the rights of the wife of a co-tenant, says:

"By confining them to the equal shares which their husbands take in the partition they have all the dower the law gives them; a voluntary partition is allowed to operate upon inchoate rights of dower because these rights are not thereby destroyed or impaired, but affected in substantially the same manner that the estates of the husband are affected, and an undivided interest in the whole property becomes a several interest in a specified parcel."

The author then takes up the case where a husband exercises the right of partition to defeat the wife's dower or defraud her, and says in such case the reason ceases, adding:

"Hence if he makes partition taking the smaller or less valuable property, receiving his compensation for so doing, the wife's right to have dower assigned at his death will not be restricted to the lesser purparty."

In *Carter* v. *Day, supra,* Williams, J., discussing the principle upon which the authorities maintain that a partition of land creates no new title to the shares set off in severalty, confines the doctrine to cases where each co-tenant receives no more than his proper share of the land.

In *Freeman* v. *Allen,* 17 O. S., 527, where a tenant in partition took the whole estate by election, it was held that his estate was ancestral as to the interest acquired by descent, but as to the remainder acquired by election it was considered an estate by purchase.

It also argued that Mrs. Morningstar, the dower claimant, having joined in the partition deed to Alice, releasing her dower in her husband's interest in that tract, she consented to the partition and thereby became endowed with a larger amount of real

estate and ought not now to be permitted to assert dower as against the mortgage given for the excess of the share taken by her husband.

If authority is sought on this subject it can only be supported as an exchange of mutual interests which at common law puts the widow to an election between the tracts exchanged. 2d Blackstone's Commentaries, 323.

In order, however, to sustain a case of exchange the interests mutually transferred must be equal. Otherwise the right of dower will attach as in ordinary cases of sale and conveyance. 1st Scribner on Dower, page 288; Wilcox v. Randall, 7 Barber, 633.

Even if the doctrine of exchange applies, it would put the dowress to an election between dower in the interest conveyed by the husband and that received by the husband in the exchange, which is, in this case, the undivided interest of the husband acquired by purchase, and such doctrine would not affect the dower attaching to the interest of the husband which he had acquired by descent.

Upon a full and extended consideration the court has arrived at the conclusion that J. H. Morningstar, after the division of the estate, held title to the fourteen-acre tract, one-half by descent from his father and one-half by purchase from Alice. That the mortgage of Alice attached as a purchasing money mortgage as the first lien upon the interest acquired by purchase, but subject to the dower upon the undivided half acquired by descent.

The dower will be computed according to the usual tables and made the first lien on the undivided half so acquired by descent. As to the other undivided half the dower will be fixed at the same amount but made subject to the purchase money mortgage.

*Robison & Yount* and *D. P. Irwin,* for plaintiff.

*Anderson, Bowman & Anderson,* for defendant.